**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ARCARE, INC.,** an Arkansas Corporation, on behalf of itself and all others similarly situated, <br><br> **Plaintiff,** <br><br> v. <br><br> **ALERE INC.,** and **ALERE HOME MONITORING, INC.,** <br><br> **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) |

Case No.: 1:16-CV-12093-RGS
**CLASS ACTION**

### DEFENDANTS ALERE INC. AND ALERE HOME MONITORING, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiff ARcare, Inc. purports to state a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, based on two faxes that Plaintiff received at its place of business in Augusta, Arkansas, from Alere Home Monitoring, Inc. ("AHM"), a company based in Livermore, California. Compl. ¶¶ 9, 12; Exs. A-B; *see* Declaration of Sallie A. Kennedy ("Decl.") ¶ 5. As explained below, Plaintiff's Complaint is deficient in four key respects.

*First*, the Court should dismiss the Complaint under FRCP 12(b)(1) because Plaintiff lacks Article III standing. Plaintiff's conclusory and generalized allegations do not demonstrate that it suffered an actionable injury-in-fact as a result of receiving two informational faxes from AHM. Plaintiff alleges, at most, that AHM's actions constitute a bare violation of the TCPA, which does not satisfy Article III under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

*Second*, in the alternative, the Court should dismiss the Complaint under FRCP 12(b)(6) because Plaintiff fails to state a claim for relief. The two faxes Plaintiff received are not

"advertisements," and therefore they are not regulated by the TCPA. Rather, the faxes are lawful "informational" notices that respectively (1) alerted Plaintiff of a voluntary withdrawal of an AHM product; and (2) announced a new contract between AHM and UnitedHealthcare for the provision of certain medical services to Plaintiff's patients. *See* Compl. Exs. A-B.

*Third*, even assuming Plaintiff has properly asserted its claim, the Court should dismiss Alere Inc. ("Alere") under FRCP 12(b)(6). Plaintiff has not alleged any facts that demonstrate Alere, AHM's parent company and a separate corporate entity, is liable for faxes sent by AHM alone.

*Fourth*, the Court should dismiss AHM under FRCP 12(b)(3) because it lacks personal jurisdiction. AHM, a Delaware corporation with its principal place of business in California, has no legally significant contacts with Massachusetts.

For these reasons, Plaintiff's Complaint should be dismissed in its entirety.

## **BACKGROUND**

The Complaint alleges few specific facts to support its TCPA claim. In sum, Plaintiff, a primary healthcare provider in Arkansas,[1] asserts that it and other unnamed individuals received "unsolicited advertisements" from Defendants during an unspecified "Class Period." Compl. ¶¶ 3, 12, 21. The Complaint incorporates two attached faxes[2] (Exhibits A and B),

---

[1] Defendants ask that the Court take judicial notice of Plaintiff's website, which describes Plaintiff as "a private, non-profit corporation developed to provide affordable care to meet the primary medical and dental care needs of the residents in rural Arkansas[.]" ARCARE.NET, http://www.arcare.net (last visited Jan. 25, 2017); *e.g.*, *Sarvis v. Polyvore, Inc.*, No. CIV.A. 12-12233-NMG, 2013 WL 4056208, at *4 (D. Mass. Aug. 9, 2013) (taking judicial notice of images on defendant's website on motion to dismiss).

[2] These faxes are properly before the Court. *See Dean v. Compass Receivables Mgmt. Corp.*, 148 F. Supp. 2d 116, 117 (D. Mass. 2001) (noting that courts may "consider exhibits attached to complaints in addition to the allegations of the complaint itself when ruling on motions"). Further, to the extent any of Plaintiff's allegations in the Complaint contradict the faxes, the faxes control the Court's analysis. *Cf. In re Cytyc Corp.*, No. CIV.A. 02-12399-NMG,

which, by their express terms, were sent to Plaintiff by "Alere Home Monitoring, Inc.," not

Alere. *See* Compl. ¶¶ 13, 15; Exs. A-B. Despite the fact that neither Plaintiff nor AHM have

any relevant contacts with the State of Massachusetts, Plaintiff filed suit against both

Defendants on October 19, 2016, in this Court. *See* Compl.

I.      **THE AHM FAXES INCORPORATED BY PLAINTIFF'S COMPLAINT**

The two faxes attached to Plaintiff's Complaint form the sole basis for Plaintiff's

claims. In the first, AHM notified Plaintiff, the recipient healthcare provider, that "[y]ou are

receiving this letter because a voluntary withdrawal has been issued for one of our home INR

meters we offered in the past." Compl. Ex. A at 1. AHM explained that it was "not aware of

any patients that you have currently using the device subject to the voluntary recall[,]" but it

urged Plaintiff to "contact us if this is not the case." *Id.* The letter further clarified that another

self-testing meter was not subject to the withdrawal. *Id.* Finally, the letter provided AHM's

office phone number to provide patients' treatment through AHM's home monitoring program.

*Id.* AHM is the only sender identified on the fax; AHM is named in the signature block, and its

California contact information is included at the top of the page. *Id.*

In the second, AHM announced a contract between AHM and UnitedHealthcare that

allows UnitedHealthcare's member-patients to receive insurance coverage for AHM self-

testing products. Compl. Ex. B. at 1. The announcement provided AHM's contact information

and a separate prescription form for qualifying patients. *Id.* at 1-2. Consistent with

recommendations by the Centers for Medicare & Medicaid Services ("CMS"), the prescription

form contains a "sufficiently detailed" description of the self-monitoring system and directs the

---

2005 WL 3801468, at *2 n.2 (D. Mass. Mar. 2, 2005) ("[W]hen a written instrument contradicts
allegations in the complaint to which it is attached, the exhibit trumps the allegations[.]"
(quotation omitted)).

physician to provide pertinent medical information, such as an applicable diagnosis code or description of the patient's condition. *See id.* at 2; CMS, Publication 100-08, Medicare Program Integrity Manual ("MPIM"), Ch. 5, § 5.2.3, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/pim83c05.pdf; *accord* 42 C.F.R. § 410.38(g)(4) (outlining minimum requirements). AHM sent these notices to Plaintiff as an important part of its role as a healthcare products and services supplier.

## II.     AHM AND ALERE

AHM provides anticoagulation home-monitoring services and related products to patients undergoing warfarin therapy to control and prevent thromboembolic disorders. Compl. ¶¶ 11-12; Exs. A-B. AHM is a subsidiary of Alere, a global diagnostic device and service provider. *Id.* ¶ 10; Decl. ¶ 4. Contrary to Plaintiff's allegations, Waltham, Massachusetts, is not AHM's principal place of business. *See* Compl. ¶ 11; Decl. ¶ 5. AHM is organized under the laws of the State of Delaware with its principal place of business in Livermore, California. Decl. ¶ 5.

AHM has no legally significant contacts with Massachusetts. AHM does not own or lease any property, possess any bank accounts, or operate any offices in Massachusetts. *Id.* ¶¶ 6-7, 9. It does not maintain a mailing post office box or telephone number in Massachusetts. *Id.* ¶ 8. Out of AHM's 1,079 full-time and part-time employees nationwide, only twenty-three are located in Massachusetts, and only four percent of AHM's patients reside in the state. *Id.* ¶¶ 10-11. Further, AHM has never targeted or directed any advertising specifically towards Massachusetts, and AHM did not send the faxes at issue to Plaintiff in Massachusetts. *Id.* ¶¶ 12-13. In fact, AHM did not have any contact with Plaintiff in Massachusetts whatsoever. *Id.* ¶ 14.

## ARGUMENT

## I.     PLAINTIFF LACKS ARTICLE III STANDING TO BRING ITS CLAIM.

As a preliminary matter, Defendants move to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1). Plaintiff asserts that AHM's faxes "caused actual damage" to Plaintiff and potential class members. Compl. ¶ 33. Plaintiff also contends that unsolicited advertising generally causes loss of "paper, toner, and ink" and costs time that it would have otherwise spent on "business activities." *Id.* These conclusory and generalized allegations do not satisfy the "'[f]irst and foremost'" element of standing—injury in fact—which requires Plaintiff to show that it "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1547-48.

In *Spokeo*, the Supreme Court confirmed that Article III standing requires Plaintiff to allege more than a statutory violation. "[I]njury in fact," the Court explained, is the "irreducible constitutional minimum" of Article III standing, and Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Put differently, to satisfy Article III's injury-in-fact requirement, a plaintiff must allege that it suffered concrete harm—that is, a "*de facto*" injury that "actually exist[s]" independent of any statute. *Spokeo*, 136 S. Ct. at 1548-49.

In light of *Spokeo*, district courts in other Circuits have dismissed TCPA claims that fail to allege the plaintiff suffered any independent harm beyond a bare statutory violation. *E.g.*, *Ewing v. SQM US, Inc.*, 2016 WL 5846494, at *2 (S.D. Cal. Sept. 29, 2016) (dismissing

plaintiff's TCPA claim because "Plaintiff's alleged concrete harm…was divorced from the alleged violation of the TCPA", where plaintiff merely mimicked the language of the TCPA in his allegations); *Romero v. Dep't Stores Nat'l Bank*, 2016 WL 4184099, at *1 (S.D. Cal. Aug. 5, 2016) (granting motion for summary judgment where plaintiff failed to demonstrate that any one of defendant's 290 automated calls caused plaintiff any concrete harm); and *Sartin v. EKF Diagnostics, Inc.*, 2016 WL 3598297, at *3-4 (E.D. La. July 5, 2016) (granting motion to dismiss where plaintiff failed to allege any factual support for his claim that defendants' unsolicited faxes caused any concrete harm).

Plaintiff's claim fails for the same reason. As in the preceding cases, Plaintiff has not presented any factual basis to support its conclusory allegation that it suffered an actionable injury simply because it received two notices from AHM via fax. *See Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir. 2001) (dismissing complaint when plaintiffs failed to plead specific facts indicating they suffered an injury in fact); *Cocona, Inc. v. Sheex, Inc.*, 92 F. Supp. 3d 1032, 1040 (D. Colo. 2015) (finding plaintiff's "conclusory" allegation insufficient to establish standing). Indeed, Plaintiff does not even allege that its employees actually reviewed the faxes, or that the two single-page faxes otherwise interrupted its phone lines during business hours. Plaintiff merely complains in vague and conclusory terms about issues that may arise from "junk faxes" in general. *See* Compl. ¶¶ 3, 33. Accordingly, Plaintiff's Complaint should be dismissed.

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF.

Defendants alternatively move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. "Thus, when confronted with a motion to dismiss, the court accepts as true all well-

pleaded facts and draws all reasonable inferences in favor of the plaintiff." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). Dismissal is warranted when a complaint, so viewed, fails to allege a "plausible entitlement to relief." *Rodriguez-Oritz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).

Here, Plaintiff fails to allege a "plausible entitlement to relief" under the TCPA for two reasons: *First*, because the AHM faxes at issue are "informational" communications, not "advertisements," they cannot support a claim under the TCPA. *Second*, Plaintiff cannot allege any set of facts that would render AHM's separate parent company, Alere, liable for the AHM faxes.

### A.  The Faxes Are Lawful "Informational" Communications.

Plaintiff's TCPA claim fails as a matter of law[3] because the faxes at issue are not "advertisements" under the TCPA. The TCPA does not regulate all faxes; it only prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited *advertisement*," subject to certain exemptions. *See* 47 U.S.C. § 227(b)(1)(C) (emphasis added); *see also Phillips Randolph*, 526 F. Supp. 2d at 852 ("Congress' primary purpose in enacting the TCPA was to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements, and therefore [it] does not apply to other forms of communication transmitted by fax."). The Federal Communications Commission

---

[3] The Court can determine the faxes are not "advertisements" as a matter of law at the pleadings stage. *E.g.*, *Holmes v. Back Doctors, Ltd.*, Case No. 09-540, 2009 WL 3425961, *2 (S.D. Ill. Oct. 21, 2009), *vacated in part on other grounds*, 695 F. Supp. 2d 843 (S.D. Ill. 2010) ("whether the faxes at issue are unsolicited advertisements . . . is a question of law appropriate for resolution by the Court"); *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007) (granting motion to dismiss because the fax at issue was not an "advertisement" under the TCPA).

("FCC"), the agency responsible for issuing regulations interpreting and implementing the TCPA (47 U.S.C. § 151), has clarified that a fax is an "advertisement" where its *primary purpose* is to "promote a commercial product or service." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 and Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-0278 and 0-338, Final Rule, FCC06-42, 71 Fed. Reg. 25967-01, 25974 (May 3, 2006) (hereinafter, "FCC Order") (emphasis added); *e.g.*, *Peter Strojnik, P.C. v. Signalife, Inc.*, Case No. 08-1116, 2009 WL 605411, at *5 (D. Ariz. Mar. 9, 2009) (holding that a fax touting stock and the "JUICY PROFITS" possible if the "STOCK TRIPLE[S] FROM HERE" was an advertisement).

By contrast, a fax that primarily conveys information (an "informational" fax) is not an "advertisement" under the TCPA. *Id.* at 25973; *see also Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2013 WL 486207, at *2 (D.N.J. Feb. 6, 2013) (noting that "the statute draws a line between informational messages and advertisements"). For example, the FCC has expressly recognized that newsletters, industry news articles, legislative updates, and employee benefit information all constitute "informational" faxes. *Id.* at 25973. Similarly, "[m]essages . . . [that] notify the recipient of a change in terms or features regarding an account, subscription, membership, loan or comparable ongoing relationship" are not prohibited by the TCPA. *Id.* at 25972.

The faxes AHM sent to Plaintiff are lawful "informational" communications that provide an important service to healthcare providers and their patients.[4] *See id.* at 25973; *cf.*,

---

[4] The Court should determine that the faxes at issue are informational communications. Furthermore, to the extent subsequent discovery reveals that Plaintiff or any physician affiliated with Plaintiff previously prescribed AHM's products to their patients, the faxes are also properly characterized as "transactional" communications that will not support any claim under the TCPA. *See* FCC Order at 25972-73 (recognizing that "transactional" communications intended

*Sorrell v. IMS Health Inc*., 131 S.Ct. 2653, 2662-64 (2011) (observing that "the creation and dissemination of information are speech within the meaning of the First Amendment" and that speech, "particularly in the fields of medicine and public health, where information can save lives," is protected by the First Amendment). The "primary purpose" of both faxes is to inform healthcare providers like Plaintiff of timely, critical changes that directly impact the provider's patients. *See* Compl. Exs. A-B.

In the first fax, AHM alerted Plaintiff that "[y]ou are receiving this letter because a voluntary withdrawal has been issued for one of our home INR meters we offered in the past." Compl. Ex. A at 1. The letter further clarified that another AHM self-testing meter was not subject to the withdrawal. *Id.* Common sense dictates that patients' continued use of withdrawn products without consultation with their physician may adversely affect their health, and healthcare providers should therefore be apprised of withdrawals as quickly and effectively as possible to enable them to best advise their patients. For companies like AHM, sending informational notices by fax to the physicians is faster and more efficient than mail, and it also decreases the possibility that the notice will be misrouted, or overlooked in an overloaded e-mail account.

Similarly, the second fax announced a contract between AHM and UnitedHealthcare that allows UnitedHealthcare's member-patients to receive insurance coverage for AHM's self-testing products. Compl. Ex. B. at 1. The announcement also provided a separate prescription form for qualifying patients that includes content consistent with recommendations by the CMS. *Id.* at 1-2; MPIM § 5.2.3. Like the first fax, this notice served an important purpose:

---

to "facilitate" parties' existing or ongoing dealings or to notify the recipient of "a change in terms or features" are not subject to the TCPA); *e.g.*, *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, Civil Action No. 3:16-cv-1289-AKK, Dkt. 35 (Nov. 30, 2016) (granting motion to dismiss where faxes furthered transactions between the sender and recipient's patients).

medical professionals have long recognized that insurance coverage directly affects the likelihood that a patient will follow a physician's instructions and obtain prescribed medications. *See, e.g.*, Catherine Cooke, *You Wrote the Prescription, But Will It Get Filled?*, 60 JOURNAL OF FAMILY PRACTICE 321 (June 2011) ("Higher co-payment was a strong predictor of decreased adherence" to a physician's instructions, and "the most common reason cited for failing to fill [a] prescription.").[5] Medical researchers have therefore urged fellow physicians to "educate ourselves about medication costs" so that "we can discuss them with our patients" and consider them when developing treatment plans. Niteesh Choudhry, *Copayment Levels and Medication Adherence: Less is More*, 119 CIRCULATION 365 (Jan. 2009). Informational notices, like this fax, thus "educate physicians" about treatment costs to their patients, providing a significant public benefit. AHM's notice carries particular weight since UnitedHealthcare is recognized as "one of the largest health insurance carriers in the United States." *Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, Case No. 5:10-CV-04911, 2012 WL 1094651, *1 (N.D. Cal. Mar. 29, 2012).

Case law confirms that communications that provide timely, relevant information are outside the scope of the TCPA. For example, in *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, Civil Action No. 12-2132 (FLW), 2013 WL 486207 (D.N.J.  Feb. 6, 2013), the court granted the defendant's motion to dismiss after concluding that the faxes at issue—which advised that a drug had been reclassified for insurance coverage purposes and provided copayment information for UnitedHealthcare—were informational messages, not advertisements. *Id.* at *1, 5. Similarly, in *Holmes v. Back Doctors, Ltd.*, Case No. 09-540, 2009 WL 3425961 (S.D. Ill. Oct. 21, 2009), *order amended to remand state-law claims*, 695 F.

---

[5] *Available online at* http://www.jfponline.com/Pages.asp?AID=9651.

Supp. 2d 843 (S.D. Ill. 2010), the court held that faxes containing information about various medical disorders sent by a chiropractic firm to personal injury lawyers were not "advertisements" under the TCPA, even though they provided the defendant with some advertising benefit. *Id.* at *2-4; 695 F. Supp. 2d at 851 (noting that faxes included "bona fide medical information of interest to" members of recipient's profession). In *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, Case No. 1:09-cv-1076, 2011 WL 553826 (N.D. Ga. Feb. 7, 2011), the court held that a fax inviting doctors to a seminar regarding the defendant insurance company's billing practices, to learn how to submit claims and speed up the reimbursement process, was also "informational" and not an advertisement. *Id.* at *4. Likewise, in *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218 (6th Cir. 2015), the faxes at issue included a list of plan-preferred medications covered under the chiropractor's patients' health insurance plans and the manager's contact information. *Id.*at 220. The district court concluded that the faxes were informational, not promotional, and the Sixth Circuit agreed. *Id.* at 221-22. Rather, the faxes were part of a service that was rendered to the healthcare provider's patients. *Id.*

The same is true here. AHM sent the faxes to Plaintiff as a service to both healthcare providers and their patients, alerting Plaintiff to insurance and product changes essential to appropriate medical treatment. *See* Compl. Exs. A-B. Neither fax offers AHM products to Plaintiff or provides detailed product information, including the products' price or description. *See id.* Accordingly, the two notices Plaintiff received are lawful "informational" faxes. Any "incidental advertisement" in the faxes does not alter their primary purpose and "does not convert the entire communication into an advertisement." *See* FCC Order at 25973-74; *e.g.*, *Janssen Pharm., Inc.*, 2013 WL 486207, *6 (concluding that advertisement was merely

incidental to informational message of faxes that "were clearly only useful to physicians who were prescribing Levaquin to patients on UnitedHealthcare PDL," and marketing logos appeared only in the margins, informational statement used "most of the space," and faxes included defendants' contact information).  Likewise, any "ancillary commercial benefit" to AHM in sending these informational faxes does not alter their classification. See *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) (finding that the fact that a recipient may apply for the job offered did not alter the informational nature of the fax). These faxes are not "advertisements" within the definition of the TCPA, and Plaintiff's Complaint should be dismissed.

**B.  Plaintiff Fails to Allege a Claim Against Parent Company Alere.**

Plaintiff's TCPA claim against parent company Alere fails for two additional reasons: *First*, Plaintiff has not adequately alleged that Alere is the "sender" of the faxes as defined by TCPA regulations, and there is no factual basis to reach that conclusion in the faxes. *Second*, Plaintiff has not alleged any facts that would support a claim against Alere as AHM's "alter ego." Accordingly, Alere should be dismissed from this case.

**1.  <u>Alere Is Not the "Sender" of the Faxes.</u>**

The TCPA makes it unlawful to "send" an unsolicited advertisement except in limited circumstances. 47 U.S.C. § 227(b)(1)(C). The FCC defines a "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). Plaintiff's claim against Alere fails as a matter of law because it does not contend that Alere is, in fact, a "sender" of the two faxes. Rather, Plaintiff improperly lumps Defendants together collectively.  Compl. ¶ 31 (alleging that "Defendants faxed unsolicited advertisement to

Plaintiff[.]"); *see Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." (quotation omitted));.*e.g.*, *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, No. 5:16CV2183, 2017 WL 27263, *3-6 (N.D. Ohio Jan. 3, 2017) (dismissing plaintiff's conclusory allegations against manufacturer whose products were advertised in the subject fax).

The faxes confirm that they were sent by AHM alone. The first fax identifies AHM's contact information in the top margin and signature block, and it expressly states that "*Alere Home Monitoring*" is the entity withdrawing "one of the home INR meters we offered in the past." Compl., Ex. A at 1 (emphasis added). Likewise, the second fax announces that "UnitedHealthcare is now contracted with *Alere Home Monitoring* for the provision of INR home monitoring services" and identifies AHM at the top and bottom of the first page. *Id.*, Ex. B at 1 (emphasis added). In addition, the second fax specifies that AHM arranges patient training for home product use and receives patients' test results. *Id.* Ex. B at 2. "Alere Inc." is not mentioned even in *passing* in either of the faxes. *See generally* Exs. A-B. The mere use of trademarks common to the entire Alere group of companies does not demonstrate Alere had any involvement in sending the faxes. *See, e.g.*, *Parrotte v. Lionetti Assocs., LLC*, No. CIV.A. ELH-13-2660, 2014 WL 1379790, at *4-5 (D. Md. Apr. 7, 2014) (granting motion to dismiss parent corporation despite plaintiff's allegation that parent and subsidiary both used a trade name that appeared on the fax at issue). Accordingly, Alere is not a "sender" of the faxes and Plaintiff cannot allege otherwise.

## 2. Alere Is Not Vicariously Liable for AHM's Faxes.

Likewise, Plaintiff has not alleged that Alere is AHM's "alter ego," or provided any

facts that would support that theory under Massachusetts law.[6] Massachusetts is especially

strict in respecting the corporate form. *See Birbara v. Locke,* 99 F.3d 1233, 1238 (1st Cir.

1996); *Manning v. Healthx, Inc.*, No. CV 15-11936-RGS, 2015 WL 4497982, at *4 (D. Mass.

July 23, 2015) (observing that Massachusetts law respects forms "even in the face of run-of-

the-mill allegations of inequitable conduct"). Corporations are ordinarily "regarded as separate

and distinct entities," and courts only "pierce the corporate veil" between parents and

subsidiaries on rare occasion. *TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353, 356

(D. Mass. 2010). Corporate formalities may disregarded in only two circumstances: (1) when

the parent exercises "some form of pervasive control of the activities of the subsidiary and

there is some fraudulent or injurious consequence of the intercorporate relationship"; and (2)

"when there is a confused intermingling of activity of two or more corporations engaged in

common enterprise with substantial disregard of the separate nature of the corporate entities, or

serious ambiguity about the manner and capacity in which the various corporations and their

respective representatives are acting." *Id.* (internal quotations omitted). "Stated more directly,

control, even pervasive control, without more, is not a sufficient basis for a court to ignore

corporate formalities." *Scott v. NG U.S. 1, Inc.*, 881 N.E.2d 1125, 1132 (Mass. 2008).

Plaintiff's Complaint offers *no* factual basis for piercing the corporate veil between

Alere and AHM. *See generally* Compl. Plaintiff's Complaint does not allege any fraud, deceit,

---

[6] Defendants recognize a potential choice of law issue in this case as both Defendants are entities organized under the laws of Delaware, and Plaintiff has filed this case in Massachusetts. However, both Delaware and Massachusetts impose similarly strict demands for veil-piercing. *See, e.g.*, *Case Fin., Inc. v. Alden*, No. CIV. A. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (explaining that "Delaware courts take the corporate form and corporate formalities very seriously, and . . . [the] Court will disregard the corporate form only in the 'exceptional case.'").

or dubious manipulation of AHM's corporate form. *See id.* Instead, Plaintiff has alleged that

Alere and AHM are two separate and distinct legal entities. *See* Compl. ¶¶ 10-11. Courts

routinely dismiss TCPA claims against parent companies when, as is the case here, the

complaint lacks any allegations that the parent company had any involvement in the conduct

underlying the purported claim. *See, e.g.*, *Shostack v. Diller*, No. 15-cv-2255, 2015 WL

5535808, at *4-6 (S.D.N.Y. Sept. 16, 2015) (citing cases) (dismissing TCPA claims against

parent company because plaintiff did not allege that parent had "any direct involvement with . .

. facilitating the allegedly illegal telemarketing calls to his residence"); *Zarichny v. Complete

Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 617-19 (similar). As in these cases,

Plaintiff's TCPA claim against parent company Alere should be dismissed. *TechTarget, Inc.*,

746 F. Supp. 2d at 357 (dismissing claims against parent company).

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER AHM.

In addition, AHM moves to dismiss the Complaint under Rule 12(b)(2) for lack of

personal jurisdiction. To establish jurisdiction over AHM, Plaintiff must demonstrate that this

case satisfies the requirements of both the Massachusetts long-arm statute and the Due Process

Clause of the Fourteenth Amendment, which are generally considered to be co-extensive.[7] *See*

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 2016 WL 3147645, *3 (1st Cir.

June 6, 2016); *see also Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir.

2009) (observing that "plaintiff ultimately bears the burden of persuading the court that

---

[7] Several courts have concluded that the two standards are co-extensive. *See, e.g.*, *Tatro v. Manor Care, Inc.*, 625 N.E.2d 549, 553 (Mass. 1994). However, the First Circuit has recently questioned whether that assumption is correct. *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 3-4 (1st Cir. 2016) (noting the "long-arm statute might impose more restrictive limits"). Defendants assert that Plaintiff fails to satisfy the narrower Massachusetts statute. But given this lack of clarity in the case law, Defendants proceed directly to the more generous constitutional analysis.

jurisdiction exists"). Plaintiff "cannot rest upon the pleadings" to support the Court's personal jurisdiction, "but must adduce evidence of specific facts" that confirm its allegations. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (quotations and citation omitted); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992); *see also Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) (noting that "allegations in a lawyer's brief or legal memorandum are insufficient . . . to establish jurisdictional facts").

Plaintiff cannot carry its burden in this case by demonstrating either specific or general jurisdiction over AHM.

### A. AHM Is Not Subject to Specific Jurisdiction.

Plaintiff cannot credibly assert that the Court has specific jurisdiction based on faxes sent to Arkansas from a corporation based in California. *See* Compl. ¶¶ 9, 12. Specific jurisdiction only exists where "there is a demonstrable nexus between a plaintiff's claim and a defendant's forum-based activities." *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998); *see also United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) ("[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case"). The nexus requires three things: (1) "the plaintiff's claim must be related to the defendant's contacts" with the state; (2) "the defendant's contacts with the state must be purposeful"; *and* (3) "the exercise of jurisdiction must be reasonable under the circumstances." *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). Because Plaintiff's Complaint fails on the essential "relatedness" element, it cannot establish specific jurisdiction.

Plaintiff's Complaint fails to allege any relationship between its TCPA claim and Massachusetts or any of AHM's Massachusetts-based activities. Plaintiff does not assert that

16

AHM sent the faxes from Massachusetts, that Plaintiff received the faxes in Massachusetts, or that Plaintiff was purportedly harmed in Massachusetts.[8] *See generally* Compl.; Decl. ¶¶ 13-14. And because Plaintiff's TCPA claim is wholly unrelated to Massachusetts, the Court need not proceed any further. *First*, without relatedness, there is no purposeful availment. *See Alicia v. LT's Benjamin Records*, 762 F. Supp. 2d 299, 309 (D. Mass. 2010) ("To determine purposeful availment, only contacts related to the Plaintiff['s] claims are considered"; "As indicated, there is no relatedness here and, hence, no purposeful availment."). And *second*, the reasonableness analysis is irrelevant where, as here, a plaintiff fails to satisfy the first two elements. *Williams v. Essex Ten LLC*, No. CIV.A. 13-10771-JLT, 2014 WL 1057008, at *7 (D. Mass. Mar. 13, 2014) (citing *Sawtelle v. Farrell,* 70 F.3d 1381, 1394 (1st Cir. 1995)). Accordingly, the Court cannot exercise specific jurisdiction over AHM.

### B.   AHM Is Not Subject to General Jurisdiction.

The Court also lacks general jurisdiction over AHM. In contrast to specific jurisdiction, a court can only exert general jurisdiction over a foreign corporation if the "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quotation and alterations omitted). A corporation is "essentially at home" in its state of incorporation and the state of its principal place of business. *Id.* at 760-61. Only in a "truly exceptional case" may "another jurisdiction . . . exercise such sweeping powers as the use of its adjudicatory authority to

---

[8] Plaintiff cannot overcome this deficiency by alleging that unnamed (and unknown) putative class members received faxes inside Massachusetts. As the named class representative, Plaintiff must satisfy the test for personal jurisdiction, and based on the faxes at issue, Plaintiff cannot do so. *See Calagaz v. Calhoon,* 309 F.2d 248, 253 (5th Cir. 1962) (under class action rule, court must have personal jurisdiction over named individual representative of class); *Selman v. Harvard Medical School,* 494 F. Supp. 603, 613 n.6 (S.D.N.Y.), *aff'd,* 636 F.2d 1204 (2nd Cir. 1980) (same); *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495 (7th Cir. 1972) (same).

decide matters unrelated to its citizens or to affairs within its borders." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (internal quotation marks omitted); *Adams v. New England Scaffolding, Inc.*, No. CV 13-12629-FDS, 2016 WL 6514090, at *2 (D. Mass. Oct. 28, 2016) (recognizing the Supreme Court's limitation of general jurisdiction to an "exceptional case" (internal quotation marks omitted)).

This is not an exceptional case. Contrary to Plaintiff's unsupportable allegations, Waltham, Massachusetts, is not AHM's principal place of business. *See* Compl. ¶ 11; Decl. ¶ 5. Rather, AHM is a Delaware corporation with its principal place of business in Livermore, California. Decl. ¶ 5. Moreover, AHM has no significant jurisdictional contacts with Massachusetts. AHM does not own or lease any property, possess any bank accounts, or operate offices in Massachusetts. *Id.* ¶¶ 6-7, 9. It does not maintain a mailing post office box or telephone number in Massachusetts. *Id.* ¶ 8. AHM has never targeted or directed any advertising specifically towards Massachusetts. *Id.* ¶ 12. Only twenty-three AHM employees are located in Massachusetts, and only four percent of AHM's patients reside in the state. *Id.* ¶¶ 10-11.

These meager connections fall well short of the type of "continuous and systematic general business contacts" that bestow general jurisdiction.[9] *See, e.g.*, *In re: Zofran*

---

[9] Alere's separate presence in Massachusetts does not support the exercise of general jurisdiction over AHM. For the same reasons explained in Section II.B.2, *supra*, Plaintiff's allegations do not establish that Alere is AHM's alter ego for purposes of personal jurisdiction. *See LockeBridge, LLC v. RGMS Media, Inc.*, No. CIV.A. 11-12252-DJC, 2012 WL 2370114, at *11-12 (D. Mass. June 22, 2012) (dismissing for lack of personal jurisdiction where plaintiff failed to allege alter-ego liability or sufficient facts to support such theory); *see also Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) (non-resident corporation's ownership by entity doing business in the forum does not establish jurisdiction over non-resident corporation) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) ("[N]or does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary."))).

*(Ondansetron) Prod. Liab. Litig.*, No. 1:15-CV-13760-FDS, 2016 WL 2349105, at *3 (D. Mass. May 4, 2016) (no jurisdiction where "it appears that [defendant] simply markets and sells the product in Missouri, as it presumably does in the other 49 states"); *Bulwer v. Massachusetts Coll. of Pharmacy & Health Scis.*, No. 1:13-CV-521-LM, 2014 WL 3818689, at *6 (D.N.H. Aug. 4, 2014) (no jurisdiction where defendant maintained a satellite campus in the state that served six percent of its students); *see also Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015) (no jurisdiction were defendant had employed 302 people in the forum); *Crussia v. Inova Health Sys.*, No. CV TDC-14-4017, 2015 WL 7294368, at *4 (D. Md. Nov. 19, 2015) (no jurisdiction where defendant was organized under Virginia law; owned no real estate in Maryland; defendant derived minimal revenue from services in Maryland; and contacts with Maryland consisted of advertising to Maryland customers, providing some medical services in Maryland, providing a nurse to a Maryland hospital several times a year, and employing a physician's group in Maryland); *Roof & Rack Prod., Inc. v. GYB Inv'rs, LLC*, No. 13-80575-CV, 2014 WL 3116413, at *4 (S.D. Fla. July 8, 2014) (no jurisdiction where only four percent of defendant's sales were made in Florida).

As these cases illustrate, the Court cannot exercise general jurisdiction over AHM.

## CONCLUSION

This case cannot proceed because, as explained above, Plaintiff's Complaint is deficient in four critical respects: (1) Plaintiff lacks Article III standing to assert its claim; (2) the faxes at issue are not "advertisements" and therefore cannot support a TCPA claim; (3) Plaintiff fails to state a claim against parent company Alere for faxes sent by AHM alone; and (4) the Court cannot exercise personal jurisdiction over AHM. For these reasons, Plaintiff's Complaint should be dismissed.

Dated: January 27, 2017

Respectfully submitted,

*/s/ Catherine M. O'Neil*
Catherine M. O'Neil (MA Bar #556631)
S. Stewart Haskins (*pro hac vice*)
Billie B. Pritchard (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, Georgia  30309
Tel:  (404) 572-4600
Fax:  (404) 572-5100
coneil@kslaw.com
shaskins@kslaw.com
bpritchard@kslaw.com

Nicholas A. Oldham (*pro hac vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Tel:  (202) 737-0500
Fax:  (202) 626-3737
noldham@kslaw.com

*Counsel for Defendants Alere Inc. and
Alere Home Monitoring, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this 27th day of January, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to counsel of record.

*/s/ Catherine M. O'Neil*
Counsel